**O'SULLIVAN v. BROWN et al.**
No. 12270.

United States Court of Appeals, Fifth Circuit.

Dec. 7, 1948.

Hobert Price, of Dallas, Tex., and A. B. Culbertson and M. Hendricks Brown, both of Fort Worth, Tex., for appellant.

W. P. McLean, J. A. Gooch and Denning Schattman, all of Fort Worth, Tex., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellees Brown and Howie, residents of Fort Worth, Texas, each sued the appellant, a resident of Chicago, Ill., in the State District Court of Tarrant County, Texas, for damages as the result of an automobile accident which occurred in March, 1947, upon the property of the Consolidated Vultee Aircraft Corporation, in Fort Worth, and in which an automobile owned and driven by Brown, with whom Howie was

riding,[1] collided with an automobile owned and driven by the appellant. The cases were removed to the United States District Court for the Northern District of Texas and there consolidated for trial. Service upon the appellant was made, in accordance with Texas law governing nonresident motorists,[2] through the chairman of the State Highway Commission of Texas. In motions to dismiss and to quash the summons, appellant attacked the jurisdiction of the lower court. These motions were overruled; renewed prior to trial, they were again overruled. The trial resulted in verdicts in favor of each appellee, and, from the judgments entered upon the verdicts, appellant appealed.

The pivotal and determinative question presented for our consideration concerns appellant's claim that the substituted service under the Texas statute was ineffective because the injuries out of which the two causes of action allegedly grew were incurred, not on a public highway or street, where the statute is explicitly relevant and controlling, but on and within the private grounds of the Consolidated Vultee Aircraft Corporation, an area such as is implicitly excluded from the province of the statute.

The accident occurred on a roadway, known as Grant Lane, running through a tract of some 435 acres owned by the United States Government and occupied by the Consolidated Vultee Aircraft Corporation of Fort Worth, Texas. The area is entirely under fence, with egress and ingress through constantly guarded gates. To enter the premises, one of the general public must arrange for a pass from the building manager or the Army personnel in charge. Once inside the grounds, the visitor is under military escort.

■ The acceptance and appointment of the chairman of the State Highway Commission for service of process by the nonresident motorist under the Texas statute is clearly dependent upon two contingencies: (1) Operation by the nonresident or his agent or employee of a motor vehicle upon the public highways or streets of the State, and (2) an accident or collision in which the nonresident or his agent or employee may be involved while operating a motor vehicle on such a public highway or street. All else granted, applicability of the statute hinges here upon the words "public highways or public streets". If, under the undisputed facts of the case, Grant Lane may be said to be a public high-

---

[1] Appellees were employees of the Consolidated Vultee Aircraft Corporation.

[2] Vernon's Revised Civil Statutes of Texas, article 2039a, § 1:

"The acceptance by a non-resident of this State or the acceptance by his agent, servant or employee, of the rights, privileges and benefits of the public highways or public streets of this State as evidenced by him or his agent, servant or employee operating a motor vehicle or motorcycle on any such public highway or public street, shall be deemed equivalent to an appointment by such non-resident and of his agent, servant or employee, of the Chairman of the State Highway Commission of this State, or his successor in office, to be his true and lawful attorney and agent upon whom may be served all lawful process in any civil action or proceeding now pending or hereafter instituted against said non-resident, his agent, servant or employee, growing out of any accident or collision in which said non-resident, his agent, servant or employee may be involved while operating a motor vehicle or motorcycle on such public highway or public street either in person or by his agent, servant or employee, and said acceptance or operation shall be a signification of the agreement of said non-resident, or his agent, servant or employee that any such process against him or against his agent, servant or employee, served upon said Chairman of the State Highway Commission, or his successor in office, shall be of the same legal force and validity as if served personally:

"Service of such process shall be made by leaving a certified copy of the process issued in the hands of the Chairman of the State Highway Commission in Texas at least twenty days prior to the return date thereof, to be stated in said process, and such service shall be sufficient upon said non-resident, his agent, servant or employee, provided, however, that notice of such service and a copy of the process be forthwith sent by registered mail by the Chairman of the State Highway Commission to the non-resident defendant, his agent, servant or employee."

way or street within the contemplation of the Texas nonresident motorist statute, it is obviously because of the use to which Grant Lane is put, that is, its use as a passage way for vehicular traffic. Use alone, and to that extent, however, is not enough: The control and particular nature of that use are the elements essential to resolving any question as to its correct classification.

The Texas legislature did not define a public highway or public street in the nonresident motorist statute, but it did define them in other acts having to do with motor fuel taxes and with the regulation of vehicles and of traffic.[3] Under these definitions, to constitute a public highway or street, the way must be (1) open to public use as a matter of right, (2) subject to State legislative jurisdiction under its police power and not privately owned or controlled, or (3) publicly maintained when any part of it is open to public use; while a private road or driveway is a way or place privately owned and used by the owners and those having express or implied permission from the owners, but not by other persons.

■■ The distinguishing characteristics relative to the nature and use of highways is that they be open generally to the public, as a matter of right, regardless of their ownership.[4] Vol. 1 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., § 3, pages 12, 13, defines a public road or highway in these words: "A public road is a way open to all the people, without distinction, for passage and repassage at their pleasure. It is a public thoroughfare, and statutes regulating the operation of automobiles on the highways in the interest of public safety will ordinarily be construed to include all ways used by public right for public travel, * * *."

The facts of this case do not bring Grant Lane within the accepted definition of a highway or public way in the general law; nor within the Texas statutory definitions, since it was not subject to the legislative jurisdiction either of the city of Fort Worth

---

[3] Article 7065b–1, dealing with motor fuel taxes provides: "(k) 'Public Highway' shall mean and include every way or place of whatever nature *open to the use of the public as a matter of right for the purpose of vehicular travel,* * * *." (Emphasis supplied.)

Article 6701c, § 1, dealing with vehicles using the highways, subsection (g), defines a public highway as follows: "(g) 'Public Highway' shall include any road, street, way, thoroughfare or bridge in this State not privately owned or controlled, for the use of vehicles, *over which the State has legislative jurisdiction under its police power.*" (Emphasis supplied.)

Article 6675a—1, also relating to regulation of vehicles, subsection (m), defines a public highway in language identical with that used in subsection (g) of art. 6701c.

Article 6701d, regulating traffic on the highways, subdivision III, § 13(a) and (b), defines streets or highways and private roads or ways in this language:

"(a) Street or Highway. The entire width between the boundary lines *of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.* [Emphasis supplied.]

"(b) Private Road or Driveway. Every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons."

[4] 39 C.J.S., Highways, § 1, pages 915, 916, states:

"Highways are public ways as contradistinguished from private ways. The distinguishing mark of a highway or of any way designated by a term construed as equivalent, such as a 'public way' or 'public highway,' is that it must be a way which is open generally to public use, or as expressed in the English books, 'common to all the King's subjects,' although it is the right to travel on a highway by all the world and not the exercise of the right which makes the way a highway. Its character is not determined by the size of the way, or by the number of persons who actually use it for passage; if it is open, it is immaterial that but few individuals are in a position to make use of it, or that one person is most benefited by it; and its character as a highway is not affected even by the fact that it furnishes access or egress to but a single property owner.

* * * * * *

"The ownership of a highway is immaterial in determining its character as such; in legal contemplation it may be a highway, whether it is one owned by a private corporation or one owned by the government, or a governmental corporation. * * *"

or of the State of Texas. It was not maintained in whole or in part by the public, nor was it open to public use as a matter of right. On the contrary, Grant Lane, under the general law and under the Texas legislative definition, art. 6701d, subdivision III, § 13(b), is a private road or driveway, for it is owned by the United States Government and used only by it and its contractee and those having express permission from them, and by no others.[5]

The ever increasing number of automobiles traveling across the country, often leaving in their wake injured citizens or damaged property, has compelled the various states to enact statutes, as measures protective of their own residents, similar to the one under consideration, providing for substituted service against nonresident motorists. These statutes, as does the Texas statute, make the mere operation of a motor vehicle on a highway by the nonresident motorist the equivalent of a formal appointment by him of a public officer as agent for receiving service of process.[6] A majority of the courts show a disposition towards strict interpretation,[7] despite the undoubted intention of the legislature to reach nonresidents for the purpose of indemnifying the state's own citizens. A strict construction seems unfortunate, for it may disregard the true intent of the lawmakers as well as the public policy which prompted the enactments and may operate to defeat the very purpose for which the statutes were enacted.[8]

▮▮ While we are of the opinion that the Texas nonresident motorist statute should be construed liberally and consistently with the act's purpose, we find ourselves unable to agree with the court below that Grant Lane was a public highway or street within the contemplation of that statute. As pointed out, the facts of this case do not bring Grant Lane within the definition of a public highway as found in any statutes passed by the legislature of Texas to which we have been referred or which, after diligent research, we have been able to find; nor does it fall within the definition of a highway or street as defined generally by the courts, including those of Texas.[9]

[5] A driveway leading from a parking lot on a prison site and which was used only by persons having business at the prison or employees thereof, was a private road. Merritt v. Stuve, 215 Minn. 44, 9 N.W.2d 329, 333.

[6] They have been upheld as a rightful exercise of the state's police powers. Hess v. Pawloski, 274 U.S. 352, 356, 47 S.Ct. 632, 71 L.Ed. 1091.

[7] See Vol. 9 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 5914, page 442, and the cases cited under footnote 30.

[8] In the 1942 Wisconsin Law Review, p. 441, the following appears: "By the general rule statutes providing for a substituted or constructive service of process are strictly construed. This not only applies to the procedural requirements of such statutes but also prevents the inclusion of parties who are not expressly within the terms of the statute. This rule of construction, however, should not be employed to defeat the purpose of the statute. Since the basic policy is to subject all users of the highway to the process of local courts, it would seem that the primary legislative purpose is to provide for substituted service in all cases in which there is a claim arising within the state against a motorist who cannot be reached by the ordinary manner of service and upon whom jurisdiction may validly be asserted. * * *"

[9] Highways and streets, under the decisions of the Texas courts, as set forth in 21 Texas Jurisprudence, pp. 529–531, are defined as follows:

"The term 'highway' denotes a road over which the public have a right of travel, as distinguished from a way which some persons, but not the public generally, may use. Given this right of public use, a road has in law the character of a highway notwithstanding that it has not been officially recognized as such; notwithstanding that a single person is most benefited by it, and notwithstanding that it is a cul-de-sac—for character as a highway does not depend on length nor upon the place to which the road leads, nor is character determined by the number of people who actually travel upon the way, nor the period of time during which it has been in public use. * * *

"A 'street' is a public way in a town or city. Hence a street is a special kind of highway. An 'alley' is a narrow street. Provided that the public use it as of right, an alley also is embraced within the generic term 'highway.'"

Private ways thus are distinguished (p. 531): "A private way, as the term implies, is characterized by restriction of its use as of right to the persons desig-

Since the question before us has to do with substituted service of process and not with a right of action, the provisions of Title 16 U.S.C.A. § 457 are without application.

The judgments appealed from are reversed, and the causes are remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

nated by the grant of the easement or who have acquired use thereof. Also, it is usually appurtenant to the ownership of some particular land. There is, therefore, no difficulty in classifying a way as private or public, once it has been ascertained that use of it is restricted or is open to the general public as of right."