Imogene MYERS, Plaintiff,

v.

J. H. VANDUZEE, Defendant.

Tully W. MYERS, Plaintiff,

v.

J. H. VANDUZEE, Defendant.

Civ. A. Nos. 3470, 3471.

United States District Court
N. D. Alabama,
Northeastern Division.
March 7, 1962.

Ford, Caldwell, Ford & Payne, Huntsville, Ala., for plaintiff.

Bell, Morring, Richardson & Cleary, Huntsville, Ala., for defendant.

LYNNE, Chief Judge.

In each of these cases defendant has filed a motion to quash service of process under Alabama Code, Tit. 7, § 199(½) (1959 Supp.). In part, Section 199(½) (a) states:

"Should any resident of this state, who was the driver or owner of a motor vehicle involved in an accident or collision while being *operated on any public highway in this state,* thereafter leave the state and remain away for a period of 60 days from the date of such accident or for such period conceal himself so that process cannot be served upon him, such absence from the state or such concealment shall be deemed equivalent to an appointment by such person of the secretary of state of the state of Alabama * * * to be such person's * * * true and lawful agent or attorney upon whom may be served the summons and complaint in any action against such absent or concealed

·resident * * *." [Emphasis added.]

The automobile accident giving rise to these actions occurred within the territorial limits of Redstone Arsenal in Madison County, Alabama, property of the United States over which it has exclusive jurisdiction and public admittance to which is restricted by physical enclosures and a security system requiring express authorization and issuance of identification passes or badges for entrance thereto. Under these facts, defendant contends that the accident did not occur "on any public highway" within the meaning of Section 199(½) and that the purported service of process thereunder is therefore invalid.

This identical question has arisen in other courts under similarly worded nonresident motorist statutes of other states. In O'Sullivan v. Brown, 171 F.2d 199 (5th Cir. 1948), the Texas statute there involved referred to "public highways or public streets of this State." The pertinent facts in that case are summarized in 171 F.2d at 200, as follows:

"The accident occurred on a roadway, known as Grant Lane, running through a tract of some 435 acres owned by the United States Government and occupied by the Consolidated Vultee Aircraft Corporation of Fort Worth, Texas. The area is entirely under fence, with egress and ingress through constantly guarded gates. To enter the premises, one of the general public must arrange for a pass from the building manager or the Army personnel in charge. Once inside the grounds, the visitor is under military escort."

Since "public highway" was not defined in the Texas nonresident motorist statute, the court looked to its definition by the Texas legislature in other contexts [1] and to its accepted meaning in the

[1] "Under these definitions, to constitute a public highway or street, the way must be (1) open to public use as a matter of right, (2) subject to State legislative jurisdiction under its police power and not privately owned or controlled, or (3) publicly maintained when any part of it is open to public use; while a private road or driveway is a way or place privately owned and used by the owners and

general law.[2]  The Court concluded in 171 F.2d at 201–202:

"The facts of this case do not bring Grant Lane within the accepted definition of a highway or public way in the general law; nor within the Texas statutory definitions, since it was not subject to the legislative jurisdiction either of the city of Fort Worth or of the State of Texas.  It was not maintained in whole or in part by the public, nor was it open to public use as a matter of right.  On the contrary, Grant Lane, under the general law and under the Texas legislative definition * * * is a private road or driveway, for it is owned by the United States Government and used only by it and its contractee and those having express permission from them, and by no others."

The same conclusion was reached in Camden v. Harris, 109 F.Supp. 311 (W. D.Ark.1953), concerning applicability of the Arkansas nonresident motorist statute to an accident occurring on a military reservation.  Cf. Rilling v. Jones, 130 F.Supp. 834 (D.Md.1955) (Accident on "a private dirt driveway.").

Under the Alabama statutes, "public highway," as used both in Section 199 (½) and in the conventional statute, Ala. Code, Tit. 7, § 199, is not expressly defined.  As in O'Sullivan, however, the term has been given some meaning in other contexts by the Alabama legislature.  Under the Alabama Rules of the Road, "highway" (synonymous with "public highway": Sexton v. State, 239 Ala. 662, 196 So. 746) is defined by Ala. Code, Tit. 36, § 1(12), as: "Every way or place of whatever nature open to the

use of the public *as a matter of right* for purposes of vehicular travel." (Emphasis added.)  In respect to licensing of motor vehicles, Ala. Code, Tit. 51, § 692(i) defines "public highway" as:

"Every highway, road, street, alley, lane, court, place, trail, drive, bridge, viaduct or trestle laid out or erected as such by the public or dedicated or abandoned to the public or intended for use by or for the general public * * *.  The term 'public highway' shall apply to and include driveways upon the ground of universities, colleges, schools and institutions.  The term 'public highway' shall not be deemed to include private driveways, roads, or places used by the owner, his guests and those having business with the owner *and not intended to be otherwise used by the general public.*" [Emphasis added.]

Also pertinent under the facts of this case is the Alabama common law respecting an owner's abandonment of a road to public use.  For example, in Merchant v. Markham, 170 Ala. 278, 54 So. 236 (1911), a bill to remove obstructions across a road claimed by petitioner to be a highway, the principal issue was whether the road had become a public road by prescription.  In deciding that the evidence did not warrant a conclusion that the road was a public road, the court noted in 170 Ala. at 280, 54 So. 236 that the erection of a fence across the road was indicative that the road had not become a public one although the owner had provided a gate through which certain persons were allowed to pass, since its use was thereby given a permissive character barring a conclu-

---

those having express or implied permission from the owners, but not by other persons."  [171 F.2d at 201.]

2.  "The distinguishing characteristics relative to the nature and use of highways is that they be open generally to the public, as a matter of right, regardless of their ownership.  Vol. 1 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 3, pages 12, 13, defines a

public road or highway in these words: 'A public road is a way open to all the people, without distinction, for passage and repassage at their pleasure.  It is a public thoroughfare, and statutes regulating the operation of automobiles on the highways in the interest of public safety will ordinarily be construed to include all ways used by public right for public travel * * *.' "  [171 F.2d at 201.]

sion of abandonment to public use. And in Central of Georgia Ry. Co. v. Faulkner, 217 Ala. 82, 114 So. 686, it was held that evidence as to whether a road was publicly maintained was admissible in determining whether it was a public highway.

It is the considered opinion of the court that under the Alabama nonresident motorist statutes, as under those of Texas and Arkansas, the term "public highway" must have been intended to include only such roads as the public has the completely unfettered right to travel. The result reached in the O'Sullivan and Camden cases is therefore applicable under the facts of this case.

It is accordingly ORDERED, ADJUDGED and DECREED by the court that the purported service of process on the defendant in each of the above-styled cases be and the same is hereby quashed and held for naught.