Woodruff v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00046-CR







Russell Woodruff, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0931072, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING






 

 Appellant, Russell Woodruff, was convicted of driving while intoxicated on the
streets of Bergstrom Air Force Base. See Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 3,
1983 Tex. Gen. Laws 1568, 1574 (Tex. Rev. Civ. Stat. Ann. art. 6701l-1(b), since repealed and
codified at Tex. Penal Code Ann. § 49.04 (West 1994)). The trial court assessed punishment,
enhanced by four prior convictions for the same offense, at three years' imprisonment and a
$1,000 fine. In appellant's sole point of error, he contends that the evidence is insufficient to
support his conviction because Bergstrom was not a "public place" as required by the statute. 
Finding no merit in this contention, we will affirm the conviction. 



FACTUAL AND PROCEDURAL BACKGROUND


 About midnight on January 31, 1993, Sgt. Daniel Derick of the United States Air
Force Security Police was conducting routine traffic radar detection on Bergstrom Air Force Base
when he heard tires squealing. He saw a pickup truck traveling at a high rate of speed with its
lights off. Sgt. Derick pursued the pickup and reached speeds of seventy miles per hour during
his pursuit. The pickup stopped, and appellant got out. Sgt. Derick testified that appellant was
staggering and "acted as if I wasn't even there." After making contact with appellant, Sgt. Derick
asked him for some identification. Appellant produced two credit cards before finally producing
a military identification card and expired military orders. Sgt. Derick stated that appellant's
speech was "mushmouthed" and he smelled of alcohol. Sgt. Derick then administered field
sobriety tests, which appellant failed. Concluding that appellant was drunk, Sgt. Derick detained
him until Austin police officers arrived. (1)



 DISCUSSION


 The critical inquiry on review of the legal sufficiency of the evidence to support
a criminal conviction is whether the evidence contained in the record could reasonably support
a finding of guilt beyond a reasonable doubt. This Court does not ask whether it believes that the
evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is
whether, after viewing the evidence in the light most favorable to the prosecution, any rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex.
Crim. App. 1981). 

 Article 6701l-1(b), the statute under which appellant was convicted, stated: "A
person commits an offense if the person is intoxicated while driving or operating a motor vehicle
in a public place." Further, article 6701l-1(a)(4) provided that "public place" has the meaning
assigned to it by the Texas Penal Code. The Penal Code definition, located at Section 1.07(a)(40),
states:



"Public place" means any place to which the public or a substantial group of the
public has access and includes, but is not limited to, streets, highways, and the
common areas of schools, hospitals, apartment houses, office buildings, transport
facilities and shops.



Tex. Penal Code Ann. § 1.07(a)(40) (West 1994). (2)

 Appellant contends that Bergstrom was not a public place within the meaning of
the relevant statute. (3) Therefore, he argues, the State has failed to prove an element of the offense,
and his conviction is not legally supported by the evidence. We disagree.

 Appellant relies on O'Sullivan v. Brown, 171 F.2d 199 (5th Cir. 1948), for the
proposition that Bergstrom was not a public place. In O'Sullivan, the court held that the roads
at a privately owned aircraft corporation located on government property were not public roads
because the location was entirely fenced and constantly guarded, visitors had to arrange for a pass
in order to gain access, and visitors were accompanied by a military escort at all times. Id. at
200. Certainly, Bergstrom shared many of these restrictive measures. The base was fenced, its
gates were guarded, and passes were required. However, the requirement of a military escort in
O'Sullivan clearly shows the highly restrictive policy of the aircraft corporation. The corporation
did not merely monitor the ingress and egress to the compound or require proper identification
for access. Rather, once permission to enter the compound was granted, the corporation subjected
visitors to constant military supervision for the duration of their visit. As the record reflects, the
level of access enjoyed by the public at Bergstrom was much greater than the very limited access
available in O'Sullivan.

 The Court of Criminal Appeals distinguished O'Sullivan on this basis in Tracey v.
State, 350 S.W.2d 563 (Tex. Crim. App. 1961). In Tracey, the court squarely addressed the issue
of whether a road inside Dyess Air Force Base was a public roadway. Like Bergstrom, Dyess
Air Force Base was fenced, had access gates that could be closed, had controlled vehicular traffic,
and at times was completely closed to the public. Id. at 563. At the time of the drunken driving
episode in Tracey, the gates were open and unguarded. The court held the roadway inside Dyess
Air Force Base to be a public highway and upheld the drunk driving conviction. Quoting Nichols
v. State, 49 S.W.2d 783 (Tex. Crim. App. 1932), the court in Tracey stated:



[I]t would be intolerable to think that when investigating the criminal liability of
the drunken driver of an automobile on a roadway, more or greater proof would
be required to establish the character of the road, than that it was or is open for the
use, or used by the public for traffic.



Tracey, 350 S.W.2d at 563.

 Appellant argues that Tracey is limited to those situations in which the public has
unrestricted access and is therefore not applicable here. He argues that the restrictive measures
in place at Bergstrom necessarily made the base non-public. However, we believe the proper
focus should be on the extent of actual access and not on the formalities by which access is gained.

 It is clear from the record that Bergstrom's overall policy was one of monitored
access. Sgt. Derick provided testimony regarding the degree of public access to the base. He
stated that Bergstrom was fenced and the only way to get on base was through one of the access
gates. At the time of the incident, Bergstrom was a working base, and the access gates were
guarded twenty-four hours a day. Sgt. Derick conceded that the base "wasn't open just for any
vehicle to come on base." However, Sgt. Derick testified that "given the right set of
circumstances," anyone could gain access. For example, Sgt. Derick explained that a person who
otherwise has no connection to the base may be "sponsored on" by someone they know. All that
is required is for the "sponsor" to leave the person's name at the gate or have the gate telephone
the sponsor for verbal authorization. Sgt. Derick testified that anyone on base could be a sponsor. 
According to Sgt. Derick, even civilians without a sponsor could obtain a visitor's pass by going
through the proper procedures at the public affairs office. (4)

 Moreover, some visitor's passes were valid for thirty days. Once a visitor's pass
was obtained, the visitor merely hung the pass from the rearview mirror, allowing the vehicle and
all of its occupants to enter unhindered. No further identification was required of the driver or
any of the passengers. The record also reflects evidence that several other major groups had
access to the base: active duty military and their families, reservists, retirees, non-military
personnel who worked on base, vendors who supplied the base, and anyone else who presented
a valid military identification card. Thus, the record relects that a broad segment of the public
could gain access to Bergstrom and use its roadways without supervision.

 Finally, Sgt. Derick testified that the base itself was rented from the City of Austin. 
According to Sgt. Derick, this arrangement gave the Austin Police Department jurisdiction over
"anybody on the base, military and civilian." 

 There is no indication that the public had greater access to Bergstrom than to other
bases. If we were to hold that Bergstrom was not a public place, therefore, a civilian could drive
intoxicated on any air force base in the state, where hundreds of families live and thousands of
people work, with impunity. The military authorities would lack jurisdiction, and a conviction
in civil court would be impossible given the current wording of the statute. This is obviously not
what the legislature intended. Indeed, the definition of "public place" is open ended, leaving to
the courts the discretion to expand that definition where appropriate. See Tex. Penal Code Ann.
§ 1.07(a)(4) (West 1994). Authority exists for the proposition that "if the public has any access
to the place in question, it is public." 6 Michael B. Charlton, Texas Criminal Law § 1.6 (Texas
Practice 1994) (emphasis added).

 However, there is no need in this case to expand or modify our current
understanding of "public place." We hold that Bergstrom fell within the definition of "public
place" as set forth in the relevant statutes and interpreted by case law. Therefore, the State
presented sufficient evidence to support the conviction.

 Appellant's sole point of error is overruled and his conviction is affirmed.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: May 31, 1995

Publish

1.   Because appellant's orders were expired, he was no longer "active duty" military. 
Since the Air Force has no jurisdiction over civilians, Sgt. Derick's only course of action
was to detain appellant until the civilian authorities arrived.
2.   This offense took place before September 1, 1994, and is governed by the law in
effect at the time the offense was committed. Penal Code, 73rd Leg., R.S., ch. 900, §
1.18, 1993 Tex. Gen. Laws 3586, 3705. Because the Code amendments effective
September 1, 1994 have no substantive effect on this definition of "public place," the
current Code is cited for the sake of convenience.
3.   Bergstrom is no longer an active air force base.
4.   A visitor's pass consisted of a pass that was dated and hung from the rearview
mirror of the car and a separate pass for the visitor to carry on his or her person while
on base.