**Russell WOODRUFF, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 03–94–00046–CR.**

Court of Appeals of Texas, Austin.

May 31, 1995.

Mary Kay Sicola, Austin, for appellant.

Ronald Earle, Dist. Atty. and Maura Phelan, Asst. Dist. Atty., Austin, for the State.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

JONES, Justice.

Appellant, Russell Woodruff, was convicted of driving while intoxicated on the streets of Bergstrom Air Force Base. *See* Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 3, 1983 Tex.Gen.Laws 1568, 1574 (Tex.Rev.Civ.Stat. Ann. art. 6701*l*–1(b), since repealed and codified at Tex.Penal Code Ann. § 49.04 (West 1994)). The trial court assessed punishment, enhanced by four prior convictions for the same offense, at three years' imprisonment and a $1,000 fine. In appellant's sole point of error, he contends that the evidence is insufficient to support his conviction because Bergstrom was not a "public place" as required by the statute. Finding no merit in this contention, we will affirm the conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

About midnight on January 31, 1993, Sgt. Daniel Derick of the United States Air Force Security Police was conducting routine traffic radar detection on Bergstrom Air Force Base when he heard tires squealing. He saw a pickup truck traveling at a high rate of speed with its lights off. Sgt. Derick pursued the pickup and reached speeds of seventy miles per hour during his pursuit. The pickup stopped, and appellant got out. Sgt.

Derick testified that appellant was staggering and "acted as if I wasn't even there." After making contact with appellant, Sgt. Derick asked him for some identification. Appellant produced two credit cards before finally producing a military identification card and expired military orders. Sgt. Derick stated that appellant's speech was "mush-mouthed" and he smelled of alcohol. Sgt. Derick then administered field sobriety tests, which appellant failed. Concluding that appellant was drunk, Sgt. Derick detained him until Austin police officers arrived.[1]

## DISCUSSION

■ The critical inquiry on review of the legal sufficiency of the evidence to support a criminal conviction is whether the evidence contained in the record could reasonably support a finding of guilt beyond a reasonable doubt. This Court does not ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim.App.1981).

■ Article 6701*l*–1(b), the statute under which appellant was convicted, stated: "A person commits an offense if the person is intoxicated while driving or operating a motor vehicle in a public place." Further, article 6701*l*–1(a)(4) provided that "public place" has the meaning assigned to it by the Texas Penal Code. The Penal Code definition, located at Section 1.07(a)(40), states:

"Public place" means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities and shops.

Tex.Penal Code Ann. § 1.07(a)(40) (West 1994).[2]

Appellant contends that Bergstrom was not a public place within the meaning of the relevant statute.[3] Therefore, he argues, the State has failed to prove an element of the offense, and his conviction is not legally supported by the evidence. We disagree.

Appellant relies on *O'Sullivan v. Brown*, 171 F.2d 199 (5th Cir.1948), for the proposition that Bergstrom was not a public place. In *O'Sullivan*, the court held that the roads at a privately owned aircraft corporation located on government property were not public roads because the location was entirely fenced and constantly guarded, visitors had to arrange for a pass in order to gain access, and visitors were accompanied by a military escort at all times. *Id.* at 200. Certainly, Bergstrom shared many of these restrictive measures. The base was fenced, its gates were guarded, and passes were required. However, the requirement of a military escort in *O'Sullivan* clearly shows the highly restrictive policy of the aircraft corporation. The corporation did not merely monitor the ingress and egress to the compound or require proper identification for access. Rather, once permission to enter the compound was granted, the corporation subjected visitors to constant military supervision for the duration of their visit. As the record reflects, the level of access enjoyed by the public at Bergstrom was much greater than the very limited access available in *O'Sullivan*.

The Court of Criminal Appeals distinguished *O'Sullivan* on this basis in *Tracey v. State*, 350 S.W.2d 563 (Tex.Crim.App.1961). In *Tracey*, the court squarely addressed the

---

1. Because appellant's orders were expired, he was no longer "active duty" military. Since the Air Force has no jurisdiction over civilians, Sgt. Derick's only course of action was to detain appellant until the civilian authorities arrived.

2. This offense took place before September 1, 1994, and is governed by the law in effect at the time the offense was committed. Penal Code,

73rd Leg., R.S., ch. 900, § 1.18, 1993 Tex.Gen. Laws 3586, 3705. Because the Code amendments effective September 1, 1994 have no substantive effect on this definition of "public place," the current Code is cited for the sake of convenience.

3. Bergstrom is no longer an active air force base.

issue of whether a road inside Dyess Air Force Base was a public roadway. Like Bergstrom, Dyess Air Force Base was fenced, had access gates that could be closed, had controlled vehicular traffic, and at times was completely closed to the public. *Id.* at 563. At the time of the drunken driving episode in *Tracey,* the gates were open and unguarded. The court held the roadway inside Dyess Air Force Base to be a public highway and upheld the drunk driving conviction. Quoting *Nichols v. State,* 120 Tex. Crim. 219, 49 S.W.2d 783 (App.1932), the court in *Tracey* stated:

> [I]t would be intolerable to think that when investigating the criminal liability of the drunken driver of an automobile on a roadway, more or greater proof would be required to establish the character of the road, than that it was or is open for the use, or used by the public for traffic.

*Tracey,* 350 S.W.2d at 563.

Appellant argues that *Tracey* is limited to those situations in which the public has unrestricted access and is therefore not applicable here. He argues that the restrictive measures in place at Bergstrom necessarily made the base non-public. However, we believe the proper focus should be on the extent of actual access and not on the formalities by which access is gained.

It is clear from the record that Bergstrom's overall policy was one of monitored access. Sgt. Derick provided testimony regarding the degree of public access to the base. He stated that Bergstrom was fenced and the only way to get on base was through one of the access gates. At the time of the incident, Bergstrom was a working base, and the access gates were guarded twenty-four hours a day. Sgt. Derick conceded that the base "wasn't open just for any vehicle to come on base." However, Sgt. Derick testified that "given the right set of circumstances," anyone could gain access. For example, Sgt. Derick explained that a person who otherwise has no connection to the base may be "sponsored on" by someone they know. All that is required is for the "sponsor" to leave the person's name at the gate or

have the gate telephone the sponsor for verbal authorization. Sgt. Derick testified that anyone on base could be a sponsor. According to Sgt. Derick, even civilians without a sponsor could obtain a visitor's pass by going through the proper procedures at the public affairs office.[4]

Moreover, some visitor's passes were valid for thirty days. Once a visitor's pass was obtained, the visitor merely hung the pass from the rearview mirror, allowing the vehicle and all of its occupants to enter unhindered. No further identification was required of the driver or any of the passengers. The record also reflects evidence that several other major groups had access to the base: active duty military and their families, reservists, retirees, non-military personnel who worked on base, vendors who supplied the base, and anyone else who presented a valid military identification card. Thus, the record relects that a broad segment of the public could gain access to Bergstrom and use its roadways without supervision.

Finally, Sgt. Derick testified that the base itself was rented from the City of Austin. According to Sgt. Derick, this arrangement gave the Austin Police Department jurisdiction over "anybody on the base, military and civilian."

There is no indication that the public had greater access to Bergstrom than to other bases. If we were to hold that Bergstrom was not a public place, therefore, a civilian could drive intoxicated on any air force base in the state, where hundreds of families live and thousands of people work, with impunity. The military authorities would lack jurisdiction, and a conviction in civil court would be impossible given the current wording of the statute. This is obviously not what the legislature intended. Indeed, the definition of "public place" is open ended, leaving to the courts the discretion to expand that definition where appropriate. *See* Tex.Penal Code Ann. § 1.07(a)(4) (West 1994). Authority exists for the proposition that "if the public has *any* access to the place in question, it is public." 6 Michael B. Charlton, *Texas Crim-*

---

4. A visitor's pass consisted of a pass that was dated and hung from the rearview mirror of the

car and a separate pass for the visitor to carry on his or her person while on base.

*inal Law* § 1.6 (Texas Practice 1994) (emphasis added).

However, there is no need in this case to expand or modify our current understanding of "public place." We hold that Bergstrom fell within the definition of "public place" as set forth in the relevant statutes and interpreted by case law. Therefore, the State presented sufficient evidence to support the conviction.

Appellant's sole point of error is overruled and his conviction is affirmed.