# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00347-CR

**Robert Campos, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY,
### NO. 82580, HONORABLE LINDA ANN RODRIGUEZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State charged defendant Robert Campos with the Class B misdemeanor of driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). Following the trial court's denial of Campos's motion to suppress, Campos pleaded guilty. The court sentenced him to 180 days' confinement, probated for two years, and ordered him to pay a fine of $750. In one point of error, Campos argues that the trial court erred by not suppressing evidence obtained during his investigative detention and subsequent arrest because Campos was not in a public place at the time of his arrest, and therefore the arresting officer lacked probable cause to arrest him for DWI. We affirm the judgment of the trial court.

## BACKGROUND

At approximately 3:15 a.m. on June 17, 2006, Campos was pulled over by Officer Jason Dibble of the Kyle Police Department near the intersection of Old Highway 81 and Center

Street in Kyle, Hays County, Texas.[1] Dibble testified that he saw Campos driving in the northbound lane of Old Highway 81, an area designated as a construction zone by the Texas Department of Transportation. The northbound side of Old Highway 81 was blocked off by a combination of traffic cones, barrels, and large barricades. According to Dibble, the "barricades and cones weren't solid," but instead were periodically set around the construction zone. Dibble testified that barricades prevented direct entry to the northbound lane of Old Highway 81 from nearby side streets, but that Campos could have entered the relevant area of the construction zone through the parking lot of a tire shop.[2] Dibble also testified that the purpose of the cones, barrels, and barricades was to restrict access to the construction zone, and that there may also have been signs indicating that the zone was a restricted area.

Campos testified that he was returning home from a friend's house when he was pulled over after turning onto Old Highway 81. The defense stipulated at the suppression hearing that Campos had been drinking. When Dibble approached Campos's car to speak with him, he noticed that Campos's speech was slurred, and detected the odor of alcohol. After Dibble asked Campos to get out of the car, Dibble smelled the odor of alcohol on him, and observed that he was unsteady on his feet and still slurring his speech. Dibble then performed field sobriety tests, including the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg

---

[1] The facts recited herein are from the testimony and exhibits admitted at the pretrial suppression hearing.

[2] Campos testified that he did not enter the construction zone via the parking lot.

stand test.  Based on the results of the field sobriety tests, Dibble arrested Campos for driving while intoxicated.[3]

In a pretrial motion, Campos moved to suppress all evidence and statements obtained incident to, pursuant to, and as a result of the detention and arrest.  The trial court denied the motion to suppress, and this appeal followed.

### STANDARD OF REVIEW

The appropriate standard of review for a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings of fact, but conducting a de novo review of the court's application of law to those facts.  *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997).  The denial of a motion to suppress should be upheld if the ruling is reasonably supported by the record and correct on any theory of the law applicable to the case.  *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).  We review de novo "mixed questions of law and fact" that do not turn on credibility and demeanor.  *Guzman*, 955 S.W.2d at 89.  Finally, in reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.  *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

---

[3] Campos does not challenge the results of the field sobriety tests or the manner in which they were performed.

**DISCUSSION**

Campos argues that Dibble lacked probable cause to arrest him for DWI because Campos was not in a "public place" at the time of the incident and subsequent arrest. Under the Texas Penal Code, "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a) (West 2003). The Texas Penal Code defines a "public place" as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, *streets*, *highways*, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." *Id.* § 1.07(a)(40) (emphasis added). This listing of public places is not intended to be exclusive. *See Woodruff v. State*, 899 S.W.2d 443, 445 (Tex. App.—Austin 1995, pet. ref'd) ("The definition of 'public place' is open ended, leaving to the courts the discretion to expand that definition where appropriate." ).

Campos does not deny that he was driving on Old Highway 81, a public road and therefore an area specifically designated as a public place in the Texas Penal Code. *See* Tex. Penal Code Ann. § 1.07(a)(40) (listing streets and highways as public places). Campos, however, argues that because the northbound side of the road was blocked off by cones, barrels, and barriers, and because (as Dibble admitted) the public was not supposed to enter the area, the construction zone was no longer a public place.

This argument contradicts both the plain language of the statute, which designates streets and highways as public places, and Texas case law. Texas courts have held that even areas that strictly limit public access may qualify as public places. When determining whether an area is a public place, the relevant inquiry is whether the public or a substantial group of the public has access to the place in question. *Banda v. State*, 890 S.W.2d 42, 52 (Tex. Crim. App. 1994);

4

*Shaub v. State*, 99 S.W.3d 253, 256 (Tex. App.—Fort Worth 2003, no pet.). The level of access does not need to be complete or entirely unrestricted, provided members of the public could gain access under the right set of circumstances. *See State v. Gerstenkorn*, 239 S.W.3d 357, 359 (Tex. App.—San Antonio 2007, no pet.) (holding that gated community "with a security guard and limited access" was public place); *Woodruff*, 899 S.W.2d at 445 (holding that street in Air Force base was public place). Indeed, "[a]uthority exists for the proposition that 'if the public has *any* access to the place in question, it is public.'" *Woodruff*, 899 S.W.2d at 445-46 (quoting 6 Michael B. Charlton, Texas Criminal Law § 1.6 (Texas Practice 1994) (emphasis added)).

In *Woodruff*, the court held that an Air Force base qualifies as a public place, even though security measures restricted general access to the base. 899 S.W.2d at 445. Though the base was fenced in and entry denied to those without a connection to the base, "anyone could gain access" by being "sponsored on" by someone on the base or by obtaining a visitor's pass through the public affairs office. *Id.* In concluding that the base was still a public place despite such restrictions, the court reasoned that "the proper focus should be on the extent of actual access and not on the formalities by which access is gained." *Id.*

Restrictions such as posted signs indicating that an area is closed or inaccessible do not have the legal effect of denying the public access to that area. *See Perry v. State*, 991 S.W.2d 50, 52 (Tex. App.—Fort Worth 1998, pet. ref'd). In *Perry*, the court held that a person driving in a public park past posted hours of operation was still in a public place. *Id.* at 51-52. The court stated, "The fact that a park's hours of operation are over and the public is not 'supposed' to use the park is irrelevant to the determination of whether the place is one to which the public has access. The relevant inquiry is whether the public can enter the premises." *Id.* at 52.

In this case, the public clearly had actual access to the portion of Old Highway 81 that had been designated as a construction zone. As they were placed only periodically, the cones, barrels, and barriers did not completely restrict physical access to the zone. The zone was also accessible from areas outside the roadway, such as the parking lot of the tire shop near the location of Campos's arrest. The presence of Campos in the construction zone—along with the presence of other motorists, whose voices were heard at the start of the police recording of the arrest—further indicates that the construction zone on Old Highway 81, in addition to being a "street" or "highway" as listed in the statutory definition of "public place," was an area accessible to a substantial group of the public.

Campos argues for suppression of evidence solely on the ground that he was not in a public place at the time of his arrest for DWI. In light of our determination that Campos was in a public place, we further conclude that his arrest was lawful, and therefore that the evidence obtained was not the fruit of an illegal arrest. Accordingly, the trial court did not err in denying Campos's motion to suppress.

**CONCLUSION**

Because we find no reversible error, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: September 25, 2009

Do Not Publish

6