TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00347-CR






Robert Campos, Appellant


v.


The State of Texas, Appellee






FROM COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY, 

NO. 82580, HONORABLE LINDA ANN RODRIGUEZ, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 The State charged defendant Robert Campos with the Class B misdemeanor of
driving while intoxicated (DWI). See Tex. Penal Code Ann. § 49.04(a) (West 2003). Following the
trial court's denial of Campos's motion to suppress, Campos pleaded guilty. The court sentenced
him to 180 days' confinement, probated for two years, and ordered him to pay a fine of $750. In
one point of error, Campos argues that the trial court erred by not suppressing evidence obtained
during his investigative detention and subsequent arrest because Campos was not in a public place
at the time of his arrest, and therefore the arresting officer lacked probable cause to arrest him for
DWI. We affirm the judgment of the trial court.


BACKGROUND

 At approximately 3:15 a.m. on June 17, 2006, Campos was pulled over by Officer
Jason Dibble of the Kyle Police Department near the intersection of Old Highway 81 and Center
Street in Kyle, Hays County, Texas. (1) Dibble testified that he saw Campos driving in the northbound
lane of Old Highway 81, an area designated as a construction zone by the Texas Department of
Transportation. The northbound side of Old Highway 81 was blocked off by a combination of traffic
cones, barrels, and large barricades. According to Dibble, the "barricades and cones weren't solid,"
but instead were periodically set around the construction zone. Dibble testified that barricades
prevented direct entry to the northbound lane of Old Highway 81 from nearby side streets, but that
Campos could have entered the relevant area of the construction zone through the parking lot of a
tire shop. (2) Dibble also testified that the purpose of the cones, barrels, and barricades was to restrict
access to the construction zone, and that there may also have been signs indicating that the zone was
a restricted area.

 Campos testified that he was returning home from a friend's house when he was
pulled over after turning onto Old Highway 81. The defense stipulated at the suppression hearing
that Campos had been drinking. When Dibble approached Campos's car to speak with him, he
noticed that Campos's speech was slurred, and detected the odor of alcohol. After Dibble asked
Campos to get out of the car, Dibble smelled the odor of alcohol on him, and observed that he was
unsteady on his feet and still slurring his speech. Dibble then performed field sobriety tests,
including the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg
stand test. Based on the results of the field sobriety tests, Dibble arrested Campos for driving
while intoxicated. (3) 

 In a pretrial motion, Campos moved to suppress all evidence and statements obtained
incident to, pursuant to, and as a result of the detention and arrest. The trial court denied the motion
to suppress, and this appeal followed.


STANDARD OF REVIEW

 The appropriate standard of review for a suppression ruling is a bifurcated review,
giving almost total deference to the trial court's findings of fact, but conducting a de novo review
of the court's application of law to those facts. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim.
App. 2002); State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000)); Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim.
App. 1997). The denial of a motion to suppress should be upheld if the ruling is reasonably
supported by the record and correct on any theory of the law applicable to the case. Laney v. State,
117 S.W.3d 854, 857 (Tex. Crim. App. 2003). We review de novo "mixed questions of law and
fact" that do not turn on credibility and demeanor. Guzman, 955 S.W.2d at 89. Finally, in reviewing
a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable
to the trial court's ruling. State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).



DISCUSSION

 Campos argues that Dibble lacked probable cause to arrest him for DWI because
Campos was not in a "public place" at the time of the incident and subsequent arrest. Under the
Texas Penal Code, "A person commits an offense if the person is intoxicated while operating a
motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a) (West 2003). The Texas Penal
Code defines a "public place" as "any place to which the public or a substantial group of the public
has access and includes, but is not limited to, streets, highways, and the common areas of schools,
hospitals, apartment houses, office buildings, transport facilities, and shops." Id. § 1.07(a)(40)
(emphasis added). This listing of public places is not intended to be exclusive. See Woodruff
v. State, 899 S.W.2d 443, 445 (Tex. App.--Austin 1995, pet. ref'd) ("The definition of 'public place'
is open ended, leaving to the courts the discretion to expand that definition where appropriate." ). 

 Campos does not deny that he was driving on Old Highway 81, a public road and
therefore an area specifically designated as a public place in the Texas Penal Code. See Tex. Penal
Code Ann. § 1.07(a)(40) (listing streets and highways as public places). Campos, however, argues
that because the northbound side of the road was blocked off by cones, barrels, and barriers, and
because (as Dibble admitted) the public was not supposed to enter the area, the construction zone
was no longer a public place. 

 This argument contradicts both the plain language of the statute, which designates
streets and highways as public places, and Texas case law. Texas courts have held that even areas
that strictly limit public access may qualify as public places. When determining whether an area is
a public place, the relevant inquiry is whether the public or a substantial group of the public has
access to the place in question. Banda v. State, 890 S.W.2d 42, 52 (Tex. Crim. App. 1994);
Shaub v. State, 99 S.W.3d 253, 256 (Tex. App.--Fort Worth 2003, no pet.). The level of access does
not need to be complete or entirely unrestricted, provided members of the public could gain access
under the right set of circumstances. See State v. Gerstenkorn, 239 S.W.3d 357, 359
(Tex. App.--San Antonio 2007, no pet.) (holding that gated community "with a security guard and
limited access" was public place); Woodruff, 899 S.W.2d at 445 (holding that street in Air Force base
was public place). Indeed, "[a]uthority exists for the proposition that 'if the public has any access
to the place in question, it is public.'" Woodruff, 899 S.W.2d at 445-46 (quoting 6 Michael B.
Charlton, Texas Criminal Law § 1.6 (Texas Practice 1994) (emphasis added)). 

 In Woodruff, the court held that an Air Force base qualifies as a public place, even
though security measures restricted general access to the base. 899 S.W.2d at 445. Though the base
was fenced in and entry denied to those without a connection to the base, "anyone could gain access"
by being "sponsored on" by someone on the base or by obtaining a visitor's pass through the public
affairs office. Id. In concluding that the base was still a public place despite such restrictions, the
court reasoned that "the proper focus should be on the extent of actual access and not on the
formalities by which access is gained." Id.

 Restrictions such as posted signs indicating that an area is closed or inaccessible do
not have the legal effect of denying the public access to that area. See Perry v. State, 991 S.W.2d
50, 52 (Tex. App.--Fort Worth 1998, pet. ref'd). In Perry, the court held that a person driving in
a public park past posted hours of operation was still in a public place. Id. at 51-52. The court
stated, "The fact that a park's hours of operation are over and the public is not 'supposed' to use the
park is irrelevant to the determination of whether the place is one to which the public has access. The
relevant inquiry is whether the public can enter the premises." Id. at 52.

 In this case, the public clearly had actual access to the portion of Old Highway 81 that
had been designated as a construction zone. As they were placed only periodically, the cones,
barrels, and barriers did not completely restrict physical access to the zone. The zone was also
accessible from areas outside the roadway, such as the parking lot of the tire shop near the location
of Campos's arrest. The presence of Campos in the construction zone--along with the presence of
other motorists, whose voices were heard at the start of the police recording of the arrest--further
indicates that the construction zone on Old Highway 81, in addition to being a "street" or "highway"
as listed in the statutory definition of "public place," was an area accessible to a substantial
group of the public.

 Campos argues for suppression of evidence solely on the ground that he was not in
a public place at the time of his arrest for DWI. In light of our determination that Campos was in
a public place, we further conclude that his arrest was lawful, and therefore that the evidence
obtained was not the fruit of an illegal arrest. Accordingly, the trial court did not err in denying
Campos's motion to suppress.

CONCLUSION

 Because we find no reversible error, we affirm the judgment of the trial court.


 __________________________________________

 Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: September 25, 2009

Do Not Publish
1. The facts recited herein are from the testimony and exhibits admitted at the pretrial
suppression hearing.
2. Campos testified that he did not enter the construction zone via the parking lot.
3. Campos does not challenge the results of the field sobriety tests or the manner in which
they were performed.