Opinion issued November 19, 2009

                                                                        

 

 

 

 

 



 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00190-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



YUBIN ZHANG, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the County Criminal Court at Law No. 14

Harris County, Texas

Trial Court Cause No. 1539505

 

 



MEMORANDUM OPINION

          A jury convicted Yubin Zhang of the
class B misdemeanor offense of prostitution for knowingly soliciting another in
a public place to engage in sexual conduct for hire. See Tex. Penal Code Ann. §
43.02(a)(2) (Vernon 2003).  The trial
court assessed punishment of 180 days’ confinement in the Harris County Jail,
probated for six months, and a one hundred dollar fine.  Zhang appeals, claiming the State presented legally
and factually insufficient evidence to show that she solicited another in a
public place.  We conclude that the
evidence is sufficient to support the jury’s verdict and therefore affirm.

Background

On July 22, 2008, Officer D. Leal,
Officer M. Williams, and Sergeant Kilty investigated a prostitution
complaint.  Officer Leal called the phone
number included in the complaint from the parking lot of the Sun Blossom Cottages,
the identified apartment complex.  When Officer
Leal asked if there were any girls available, Zhang told him that girls were
available and asked when he could arrive. 
Leal responded that he would arrive immediately and was at the door
within five minutes.

The door to the apartment opened directly
into the parking lot of the complex, and neither gates nor codes controlled
access to the apartment.  The apartment
had no sign on the door indicating the presence of a business within.  After Officer Leal knocked on the door, Zhang
answered and invited him inside.  The
apartment had a small kitchen and a furnished living room, which included a
small table displaying Zhang’s massage license and a curtained area containing
a massage table.

Zhang led Officer Leal to the curtained
area and asked for fifty dollars.  When Zhang
asked if Leal had been there before, he replied that a friend told him about
the place; Zhang did not further question Leal. 
Zhang told Leal to remove his clothes and Leal complied by removing
everything except his boxers and socks.  Zhang
removed the rest of his clothes and proceeded to massage his back for twenty to
twenty-five minutes.  Zhang then told
Officer Leal to roll over, at which time she offered to masturbate him.  After they agreed on a price of twenty
dollars, Officer Leal signaled the other officers.  Shortly thereafter, the officers knocked on
the door, were granted access, and arrested Zhang.

The officers searched the apartment
and found a business card in the kitchen, indicating that Zhang ran a massage
business out of the apartment.  The card
noted business operating hours, included a map to the apartment, and indicated
that potential clients should call to make an appointment.  Police found two other people in the
apartment, but the apartment had almost no clothing in the closets.  The officers testified that, although Zhang
did not operate a registered business, Zhang had converted the apartment into a
business establishment that offered massages and prostitution.

At trial, after the State rested,
Zhang moved for an instructed verdict on the ground that the State failed to
prove that the alleged solicitation occurred in a public place.  The trial court found that sufficient
evidence of public place existed to submit the issue to the jury and denied the
motion.  The jury found Zhang guilty of
prostitution, and the trial court assessed punishment at 180 days’ confinement,
probated for six months, and a one hundred dollar fine.

Discussion

Zhang contends that the State did not
present legally and factually sufficient evidence to demonstrate that she
solicited Officer Leal in a public place. 
In a legal sufficiency review, we view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Vodochodsky v. State, 158
S.W.3d 502, 509 (Tex.
Crim. App. 2005).  The trier of fact is
the sole judge of the weight and credibility of the evidence.  Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), overruled on other grounds by Laster v. State, 275 S.W.3d 512 (Tex.
Crim. App. 2009).  Thus, when performing
a legal sufficiency review, we may not reevaluate the weight and credibility of
the evidence and substitute our judgment for that of the fact-finder.  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  We resolve any inconsistencies in the
evidence in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex.
Crim. App. 2000).

In a factual sufficiency review, we
view all the evidence in a neutral light and only set aside the verdict if the
evidence, though legally sufficient, is so obviously weak that the verdict (1) seems
“clearly wrong and manifestly unjust,” or (2) is against the great weight and
preponderance of the evidence.  Watson v. State, 204 S.W.3d 404, 414–15
(Tex. Crim. App. 2006) (quoting Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).  We cannot conclude that the verdict is “clearly
wrong or manifestly unjust” just because, based on the quantum of evidence
presented, we would have voted to acquit had we been on the jury.  See id.
at 417.  The record must contain an
objective basis that the great weight and preponderance of the evidence
contradicts the verdict before we can remand based on factual
insufficiency.  See id.  Since the jury is in
the best position to evaluate the credibility of witnesses, we defer to the
jury’s determinations.  Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).  We must also discuss the evidence that,
according to the appellant, best supports her claim and undermines the
verdict.  See Sims v. State, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003).

The State charged Zhang under section
43.02(a)(2) of the Penal Code.[1]  This subsection requires the prosecution to
prove that the conduct occurred in a public place, whereas subsection
43.02(a)(1) does not so require.  When an
indictment facially alleges a complete offense, the State is bound by the
theory alleged in the indictment, and the reviewing court is also bound by this
theory in its sufficiency analysis.  Rojas v. State, 986 S.W.2d 241, 246
(Tex. Crim. App. 1998).  Thus, even
though the State could have charged and proved the offense under the first
prong of the statute without having to show that the conduct occurred in a
public place, here, the State must prove public place because the information
alleged the offense under the second prong of the statute.

          The
Penal Code defines a “public place” as “any place to which the public or a
substantial group of the public has access and includes, but is not limited to
streets, highways, and the common areas of schools, hospitals, apartment
houses, office buildings, transport facilities, and shops.”  Tex.
Penal Code Ann. § 1.07(a)(40) (Vernon
Supp. 2008).  A place can be public or
not depending on the particular circumstances. 
Banda v State, 890 S.W.2d 42,
52 (Tex. Crim. App. 1994). The
relevant inquiry is whether the public has access to the area.  See
Loera v. State, 14 S.W.3d 464, 467 (Tex. App.—Dallas 2000, no pet.).

          Zhang
contends that the apartment is not a public place, and alternatively, that even
if the apartment is considered a public place, the curtained-off area where the
massage occurred is not a public place.  Zhang
observes that a private residence has never been considered a public place.  See
Commander v. State, 748 S.W.2d 270, 271 (Tex.
App.—Houston
[14th Dist.] 1988, no pet.) (holding a private residential driveway is not a
public place).  But the critical
determination of whether an area is a public place “should only be made after a
careful examination of the facts, and the matter should be resolved on a case
by case basis.”  Loera, 14 S.W.3d at 469.

First, evidence presented at trial
indicates that Zhang did not use the apartment as a private residence, but as a
massage parlor business.  Thus, though
one must place a phone call to gain access to the apartment, access was not
limited to private use or to those known by the occupants.  In Woodruff
v. State, a jury convicted the appellant of DWI for driving down a road in
Bergstrom Air Force Base while drunk. 
899 S.W.2d 443, 443–44 (Tex. App.—Austin 1995, pet. ref’d).  The base had guarded gates, was completely
fenced, and required passes to enter.  Id.
at 444.  However, under the right
circumstances anyone could gain access by either obtaining a visitor’s pass
from the public affairs office or by someone they know on base “sponsoring”
them onto the property.  Id.
at 445.  The court focused on the “extent
of actual access and not the formalities by which access is granted” in
determining that the air force base was a public place for the purposes of the
statute.  Id.;
see also Lazano v. State, 650 S.W.2d
137, 139 (Tex. App.—Houston
[14th Dist.] 1983, no pet.) (holding requirement that patron pay for entry did
not make theater a private place).

Zhang argues that the facts of this
case are more like those in O’Sullivan v.
Brown, 171 F.2d 199 (5th Cir. 1948), because Officer Leal was never left
alone in the apartment like the visitors in O’Sullivan,
and the visitors in Woodruff were
allowed to go as they pleased once inside the air force base.  Compare
O’Sullivan, 171 F.2d at 200 (holding road at privately-owned aircraft
corporation was not public place because visitors were required to have a pass
and were accompanied by military escort at all times), with Woodruff, 899 S.W.2d at 443–44.  The fact that Officer Leal did not have
freedom to move around the apartment unhindered does not mean that the
apartment is not a public place.  In
determining whether the State presented sufficient evidence to prove public
place, our focus “should be whether the place is one to which the public has
access.”  Leora, 14 S.W.3d at 467; see
also State v. Nailor, 949 S.W.2d 357, 359 (Tex. App.—San Antonio 1997, no
pet.) (“The relevant inquiry is whether the public can enter the premises.”).  As in Woodruff,
under the right set of circumstances, any member of the public could gain
access to the apartment.  A person with
the phone number, advertised on the business card, could gain access to the
apartment.  Officer Leal was admitted
within five minutes of making the call to Zhang.  The supervised nature of this access does not
alter the public character of this apartment.

Second, other evidence at trial
showed that Zhang routinely invited members of the public to the apartment.  See
Green v. State, 566 S.W.2d 578, 580 (Tex.
Crim. App. 1978).  In Green, the fact that the adult bookstore
was open for business strongly indicated that it was a public place.  See id.
at 582; see also Loden v. State, 561
S.W.2d 2, 3 (Tex. Crim. App. 1978) (“We hold that a bar open to the public for
business is a public place.”).  In this
case, Zhang asked if Officer Leal had visited the establishment before, which
indicates that she had other customers and did not recognize them all.  Zhang also told Officer Leal that the
business was having a slow day.  The
business card found in the apartment stated business hours, phone number, and
location, including a map to the apartment. 
Even though the massage parlor was not a registered business, Zhang
displayed a massage license, and the place was open to anyone who called
ahead.  Two other persons were present at
the time of Zhang’s arrest, which provides additional evidence that the
apartment was open to the public.  See Green, 566 S.W.2d at 580.

The fact
that Zhang propositioned the officer in a partitioned area of the living room is
also unavailing.  The appellant in Green, for example, argued that a
viewing booth in an adult bookstore was not a public place.  Id.
 The booths were approximately six feet
tall, and full length curtains covered their entries.  Id.  Officers observed the appellant engaging in
sexual conduct through a gap between the curtain and the side of the booth.  Id. at 581.  The Court of Criminal Appeals observed:

The booth was open to anyone.  All
one had to do was draw the curtain to enter the
booth. . . . Appellant testified that he looked into other
booths and saw people in them. The store was open to the public; that is the
way it was supposed to make a profit. . . . Under all of
the evidence the booth was part of a public place.

Id. at
582.  Similarly, in Cammack v. State, the Court of Criminal Appeals held that the appellant
could not alter the public nature of a booth by simply closing and locking a
door.  641 S.W.2d 906, 908 (Tex. Crim.
App. 1982).  The court reasoned that the
public had free access to the booths even when others were inside.  See id.;
see also Westbrook v. State, 624
S.W.2d 294, 295 (Tex. App.—Dallas 1981, no pet.) (citing Green for proposition that booth in public shop where occupants do
not have expectation of privacy is public place).

The partition
in this case is similar to the partitioned areas in Green and Cammack.  The curtain was drawn, but there is no
evidence that this changed the nature of the area from public to private.  At the time of the massage, other people remained
in the apartment and could potentially see into the area, just as the officers did
in Green.  A curtain partition provides even less
privacy and grants greater access to the area than a booth.  Any member of the public granted access to
the apartment would also have access to this partitioned area.  Contra
Kirtley v. State, 585 S.W.2d 724, 726 (Tex. Crim. App. 1979) (holding
interior of car traveling down road is not accessible to public and therefore
not a public place).  It is also not
highly unlikely that other occupants of the apartment would approach the
partitioned area.  Contra Honeycutt v. State, 690 S.W.2d 64, 66 (Tex. App.—Houston
[14th Dist.] 1985, pet. ref’d) (“However, it is highly unlikely that any member
of the public . . . would approach a car parked behind a
vacant building next to a fence in a dark parking lot at Airline and Tidwell at
2:00 a.m.”).  Viewing the evidence in the
light most favorable to the verdict, we conclude that the apartment was open
for a massage/prostitution business and, thus, a rational jury could have found
beyond a reasonable doubt that the apartment was a public place.

Zhang also contends that the
evidence, when viewed in a neutral light, is so weak that the verdict is
clearly wrong and manifestly unjust. 
Zhang argues that the following evidence undermines the jury’s
verdict:  the police arrested Zhang in
the interior of an apartment in a residential apartment complex; no signs
outside the apartment indicated the presence of a business inside; the
apartment had a kitchen, furnished living room, and clothing in the closet; the
massage services occurred in a private, partitioned area; Zhang personally
admitted clients into the apartment by appointment; Zhang monitored access to
the apartment and constantly supervised clients inside the apartment.  Additionally, according to Zhang, the State
produced no evidence that Zhang distributed and circulated her business card to
the general public, advertised to the public, or served a large clientele.  Even when we consider these facts, the great
weight and preponderance of the evidence does not contradict the verdict, nor
is the evidence of public place so weak as to render the verdict clearly wrong
and manifestly unjust.

Here, the door of the apartment
opened directly to the complex’s parking lot and no gates or codes controlled
access to this area.  On the phone, Zhang
informed Officer Leal that “girls were available” and she later opened the
apartment door to let him inside, suggesting the massage parlor was open for
business.  Zhang asked Leal if he had
been there before, indicating that she had enough customers such that she could
not remember all of them.  Leal mentioned
that a friend referred him to Zhang and she did not question further or inquire
about the name of Leal’s referral.  Zhang
invited Leal into the apartment even though she did not know him and they did
not have a mutual acquaintance, implying that any member of the public could
call Zhang, make an appointment, and gain access to the apartment.  When searching the apartment after arresting
Zhang, officers found two additional people upstairs and almost no clothing in
the closets.  The living room contained a
massage table located behind a large curtain partition and Zhang displayed her
massage license on a table in the living room. 
Additionally, Zhang’s business cards included the apartment’s address, phone
number, and business hours, as well as a map to the apartment’s location.  A reasonable jury could conclude that the
partitioned area, massage table and license, and the business cards with hours
of operation all indicate that Zhang used the apartment for business purposes
and invited the general public to partake of the services she offered.  Viewing all of the evidence in a neutral
light, we hold that the evidence is factually sufficient to support the jury’s verdict.

Conclusion

          The
evidence is both legally and factually sufficient to show that the misdemeanor
offense of prostitution occurred in a public place.  We therefore affirm the judgment of the trial
court.

 

 

 

                                                         Jane Bland

                                                          Justice

 

Panel consists of Justices Bland,
Massengale, and Wilson.[2]

Do Not Publish.  Tex.
R. App. P. 47.2(b).











[1] Section 43.02(a) reads:

 

            (a) A person commits an offense if
he knowingly:

(1) offers to engage, agrees to engage, or engages
in sexual conduct for a fee; or

(2) solicits another in a public place to engage
with him in sexual conduct for hire.

 

Tex. Penal Code Ann. § 43.02(a) (Vernon 2003).





[2] The Honorable Randy W. Wilson,
Judge of the 157th District Court of Harris County, Texas, participating by
assignment. See TEX. GOV'T CODE ANN. § 74.003(h) (Vernon 2005).