Opinion issued November 23, 2011               

 

 



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO.
01-09-00476-CR

———————————

Anthony W. Ackley, Appellant

V.

The State of Texas, Appellee



 



 

On Appeal from the County Court at
Law

Washington County, Texas



Trial Court Case No. 08-560

 



 

MEMORANDUM OPINION

          After
Anthony Wayne Ackley was found guilty by a jury of driving while intoxicated,[1] the court, pursuant to an
agreed punishment recommendation, assessed punishment as 180 days in jail,
suspended for 18 months, and a $500 fine. 
On appeal, he contends that the trial court erred by (1) not granting a
requested jury instruction and (2) finding probable cause for his traffic
stop.  We affirm. 

BACKGROUND

Lake
Somerville Marina and Campground has been developed on land owned by the U.S.
Army Corps of Engineers but leased and operated as a private business open to
the public for a fee.  Solon Carver and
his wife operated the campground and marina under a lease requiring them to
maintain the park’s roads.  Carver
testified that his marina and campground is privately leased and privately
maintained property; access to which is restricted by not just an admission fee
but fencing, gates, guard shacks, hours of operation, and tire spikes
preventing entry via the exits.

          While patrolling the Lake Somerville Marina and Campground
in Washington County, Department of Public Safety Trooper Steven Blackmon saw a
black pickup truck going “rather fast” on a dirt road pull up to a camper
trailer.  The driver—later identified as
Ackley—got out of the truck with a bottle in his hand and stumbled toward the
picnic area in front of the camper.  Although
Blackmon thought the driver had been drinking, since he had apparently arrived
at his destination, Blackmon continued his patrol.

          Minutes later, however, Blackmon saw the truck again, now
being driven along the dirt road as if the driver were lost and could not
figure out how to get out of the area he was in.  The truck moved forward; then it backed up.  Brockman described this as “confused” or
“maybe disoriented.”  Blackmon turned on
his dashboard camera.  Shortly
thereafter, the driver turned on to an asphalt road that the trooper testified
was “publically maintained,” at which point Blackmon noticed that neither the
driver nor passenger was wearing a seat belt and the driver was wearing
sunglasses at night.  Blackmon stopped
the truck because of the seat belt “violation” by waving his flashlight around
and was greeted by Ackley and his passenger with, “Hey, highway patrol.”

As Blackmon explained to Ackley
that he had been pulled over for not wearing a seat belt, he noticed two open
beer bottles in the truck’s center console.  Blackmon had Ackley step out of the truck and
noticed that he smelled of alcohol.  Asked how much he had to drink, Ackley
answered, “quite a few,” “more than I should have been drinking,” and admitted
to having been drinking beer since noon. 
When Brockman told Ackley that he was going to conduct field-sobriety
tests, Ackley asked why, saying, “We are in a public park” and commented, “I am
not on a street traveling down a road.”

Brockman concluded from field-sobriety
tests that Ackley was intoxicated, arrested him for driving while intoxicated
and drove him to the Washington County jail where he refused a breath
test.  Pursuant to policy in Washington
County, Blackmon drafted an affidavit for an evidentiary search warrant for Ackley’s
blood that was presented to and granted by a Burleson County district judge.  The laboratory test results: a blood-alcohol
level of 0.19 grams of alcohol per 100 milliliters of blood. 

REQUEST FOR
JURY INSTRUCTION UNDER 38.23

Ackley’s first issue asserts that
the trial court erred by not submitting a jury instruction regarding “whether Trooper Brockman
had valid and legal reasonable suspicion that an offense had been committed to
stop and detain Appellant” when “a material fact issue existed regarding the
reasonable suspicion for the stop.”  See Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).  At trial, Ackley neither submitted
a written proposed article 38.23 instruction to the court, nor dictated any
proposed instruction into the record.   

Ackley here asserts that the trial
testimony raised a factual dispute as to: (1) whether “the Campground was a
public place”; (2) whether “Appellant was operating a motor vehicle on a
private or public road”; and (3) “whether it is an offense against the State of
Texas to drive a motor vehicle on a private road and not wear a seat belt.”  Ackley maintains that because there was a
factual dispute as to Brockman’s basis to believe that an offense had occurred,
he was entitled to an article 38.23 instruction, the absence of which caused
him significant harm. 

I.       Applicable
Law

          Code of
Criminal Procedure article 38.23(a) provides that 

No evidence obtained by an
officer or other person in violation of any provisions of the Constitution or
laws of the State of Texas, or of the Constitution or laws of the United States
of America, shall be admitted in evidence against the accused on the trial of
any criminal case.

 

In any case where the legal
evidence raises an issue hereunder, the jury shall be instructed that if it
believes, or has a reasonable doubt, that the evidence was obtained in violation
of the provisions of this Article, then and in such event, the jury shall
disregard any evidence so obtained. 

          

Tex. Code Crim. Proc. Ann. art. 38.23(a)
(West 2005).         

A trial court must submit to the
jury “the law applicable to the case.”  See Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 2011); Bolden
v. State, 73 S.W.3d 428, 431 (Tex. App.—Houston [1 Dist.] 2002,
no pet.).  When a statute such as article 38.23 requires an instruction under certain
circumstances, that instruction is “law applicable to the case,” and the trial
court must instruct the jury regarding what is required under the statute.  Oursbourn v. State, 259 S.W.3d 159,
180–81 (Tex. Crim. App. 2008).

However, a defendant’s right to the
submission of a jury instruction under article 38.23 is limited to disputed
issues of fact material to a claim of a constitutional or statutory violation
that would render evidence inadmissible. 
Madden v. State, 242 S.W.3d
504, 509–10 (Tex. Crim. App. 2007).  In
order to be entitled to such jury instruction, the defendant must meet three
requirements: 

(1)     the evidence heard by the jury must raise an issue of fact;

(2)     the evidence on that fact must be affirmatively contested; and

 

(3)     that contested factual issue must be
material to the lawfulness of the challenged conduct in obtaining the evidence.

 

Id. at
510.  The contested factual issue must be
essential to the resolution of the legality of the challenged conduct; if other
facts, not in dispute, are sufficient to support the lawfulness of the
challenged conduct, then the disputed fact issue is not submitted to the jury
because it is not material to the ultimate admissibility of the evidence.  Id.
at 510–11.

Additionally, in order to be
entitled to an article 38.23 instruction a defendant must request an
instruction on a specific historical fact. 
Id. at 511.  When a defendant does not present a proposed
article 38.23 jury instruction asking the jury to decide a specific disputed
historical fact, any potential error in the charge should be reviewed only for
egregious harm.  See id. at 513.  

A person commits the offense of driving while
intoxicated if the person is intoxicated while operating a motor vehicle in a
public place.  Tex. Penal Code Ann. § 49.04(a) (West 2011).  A person violates the Transportation Code
if that person: (1) is at least 15 years of age; (2) is riding in the front
seat of a passenger vehicle while the vehicle is being operated; (3) is
occupying a seat that is equipped with a safety belt; and (4) is not secured by
a safety belt.  See Tex. Transp. Code Ann.
§ 545.413
(West 2011).  In order for this section
to apply, however, the vehicle must be operated on a highway.  See Tex. Transp. Code Ann. § 542.001 (West 2011) (“A
provision of [the Rules of the Road, Transportation Code, §§ 541.001- 600.004]
relating to the operation of a vehicle applies only to the operation of a
vehicle on a highway unless the provision specifically applies to a different
place.”)  For purposes of this section,
the term “highway” means “the width between the boundary lines of a publicly
maintained way any part of which is open to the public for vehicular
travel.”  Tex. Transp. Code Ann. § 541.302(5) (West 2011).


II.      Discussion

          On
appeal, Ackley asserts three matters which he claims are factual disputes that
required an article 38.23 instruction:

          (1)     whether
“the Campground was a public place”; 

 

(2)     whether “Appellant was operating a motor vehicle on a private or
public road”; and 

 

(3)
    “whether it is an offense against the
State of Texas to drive a motor

vehicle on a private road
and not wear a seat belt.”  

 

 The trial court initially agreed to provide an
article 38.23 instruction, but not to tie it to any specific facts, because
“38.23 doesn’t go to a specific.  It is
going to go to them telling them that they can disregard any evidence that is
illegally obtained.”  Ackley responded,
“Right.”  Ackley asked if he was allowed
to argue specific evidence, and the court agreed that he could.  Later, the court stated that it was putting
the definition of article 38.23 in the charge and that the parties could argue
as to whether there was any violation.  Ackley
answered “that is fine.”  

After a recess, the court said it
was reversing its prior ruling and not putting the article 38.23 instruction in
the charge.  Ackley objected, saying that
there was an “issue” raised because of testimony that the road was private.

The actual charge included an
instruction to the jury regarding reasonable suspicion and instructing them to
disregard any evidence if they found that Brockman did not have reasonable
suspicion for the stop, stating:

You are instructed that
before you may consider the arrest or anything subsequent to the arrest of
ANTHONY W. ACKLEY, that you must first find and believe beyond a reasonable
doubt that there was sufficient probable cause to warrant the stop of the
vehicle driven by ANTHONY W. ACKLEY.  An
officer is permitted, however, to make a temporary investigative detention of a
motorist if the officer has a reasonable suspicion that some activity out of
the ordinary is or has occurred, that the person detained is connected with
such activity, and that there is some indication that the activity is related
to crime or a criminal offense.  Now
bearing in mind these instructions, if you find from the evidence that on the
occasion in question the officer did not have a reasonable suspicion that some
activity out of the ordinary is or has occurred, that the person detained is
connected with such activity, and that there is some indication that the
activity is related to a criminal offense, immediately preceding the stop and
detention by the police officer involved herein, or you have a reasonable doubt
thereof, you will disregard all evidence subsequent to the stopping of the
defendant and you will not consider such evidence for any purpose whatsoever.

 

          After
reviewing the actual charge, Ackley’s only objection was a request to take out
the language “activity out of the ordinary” from the above instruction and
limit reasonable suspicion to an actual traffic violation. 

Because Ackley did not present a
proposed article 38.23 jury instruction to the court asking for the jury to
decide a specific disputed historical fact, any potential error in the charge
should be reviewed only for egregious harm. 
See Madden, 242 S.W.3d at
513.  We therefore consider whether the
trial court erred in not sua sponte providing a specific article 38.23 jury
instruction on any of the three bases on which Ackley now complains on
appeal.  In making this determination, we
consider whether, as to each of the complained-of omitted instructions:

(1)
    the instruction is one which requires
the jury to determine an issue of  fact,
not law; 

 

(2)     the evidence at trial raised the issue of
fact that Ackley is seeking the instruction on; 

 

(3)     the evidence on that fact was affirmatively contested; and

 

(4)     that contested factual issue was material
to the question of the lawfulness of the challenged conduct in obtaining the
evidence—that is, the determination of the factual question was crucial to resolving
whether the challenged conduct was lawful.  

 

243 S.W.3d at 510–11.

 

In the
context of the case before us, this final requirement means that the
complained-of omitted instruction must have required the jury to determine a
contested factual issue that was crucial to resolving whether Brockman had
reasonable suspicion to stop Ackley.  See id. 
Accordingly, if the complained-of omitted jury instruction asks the jury
to resolve a factual dispute whose answer is not crucial to resolving the question of whether Brockman had
reasonable suspicion to stop Ackley—either because the resolution of the
factual dispute at issue does not affect the question of reasonable suspicion
to stop or because there is other evidence at trial that would support a
finding of reasonable suspicion even if the jury resolved the factual dispute
in Ackley’s favor—then there is no error in not providing such an
instruction.  See id.  If we do find that
there was error in failing to provide one of the three complained-of omitted
instructions under article 38.23, we will next consider whether such error
caused Ackley egregious harm.  See id. at 513.

a.       Whether “the campground was a public
place”   

Ackley first asserts that the jury
should have been given an instruction requiring it to determine whether the
campground was a public place.  Although
this instruction does require the jury to answer a factual question, the
evidence at trial did not raise a factual dispute on this issue, and the
resolution of this question would not have been crucial to the determination of
whether Brockman had reasonable suspicion to stop Ackley.

A public place is defined as “any place to which the public or a substantial group of the public has
access and includes, but is not limited to, streets, highways, and the common areas of schools,
hospitals, apartment houses, office
buildings, transport facilities, and
shops.”  Tex. Penal Code Ann. §
1.07(a)(40) (West
2011).  This broad, open-ended definition
leaves discretion to the courts to expand its parameters where
appropriate.  See Loera v. State, 14 S.W.3d 464, 467 (Tex. App.—Dallas 2000, no pet.).  Clearly, however, “‘if the public has any
access to the place in question, it is public.’”  See Woodruff v. State, 899 S.W.2d 443,
445 (Tex. App.—Austin 1995, pet. ref’d) (internal citation omitted) (holding that air
force base was “public place,” despite restrictions placed on public access).  Thus, the relevant inquiry is whether the
public has any access to the area.  Tex. Penal Code Ann. § 1.07(a)(40); see
Loera, 12 S.W.3d at
467.

Although both the State and Ackley
presented testimony that the campground was accessible by the public, subject
to certain restrictions, Ackley argued that the campground was not a public
place because admittance was only by a fee and at the discretion of the
leaseholders.  These factors, however, do
not dictate that a place is private.  See
State v. Nailor, 949 S.W.2d 357,
359 (Tex. App.—San Antonio 1997, no pet.) (holding hotel parking lot that was open to the
public for fee constituted “public place”); Woodruff, 899 S.W.2d at 445 (holding that air force base was “public
place,” despite restrictions placed on public access); Kapuscinski v. State, 878 S.W.2d 248, 250 (Tex. App.—San Antonio 1994, pet. ref’d)
(holding mall parking lot was public place as
contemplated by Penal Code section 1.07(a)(40)).

Additionally, this alleged factual
dispute—whether the campground was a “public place”—is not material to the question
of reasonable suspicion to stop.  Whether
or not the campground was a public place was an issue for the jury to consider
in determining whether the State had proved its case-in-chief, see Tex. Penal Code Ann. 49.04 (a) (providing that person
commits offense if intoxicated while operating motor vehicle in public place),
and the jury was so instructed, but it
has no relevance to whether Brockman had reasonable suspicion to believe that Ackley
had committed a crime,[2] and so
it was not material to that question and no article 38.23 instruction was
required.  See Madden, 242 S.W.3d at 512.

b.       Whether
“Appellant
was operating a motor vehicle on a private or public road”

 

Ackley next asserts that the jury
should have been given an instruction requiring it to determine whether Ackley
was operating a motor vehicle on a private or public road.  This proposed jury instruction also requests
the jury to answer a specific factual question. 
The factual dispute was one which was raised by the evidence at trial,
and it was affirmatively contested.  The
remaining issue is whether this question was material—that is, is it essential in deciding the lawfulness
of the challenged conduct.  Madden, 242 S.W.3d at 510 (stating that if other
nondisputed facts are sufficient to support lawfulness of challenged conduct,
then disputed fact issue is not material to ultimate admissibility of evidence
and no instruction is required).  Here,
even if the road were private, and even if Brockman had no reasonable suspicion
to stop Ackley for driving without a seatbelt (an issue we need not resolve),
the evidence at trial demonstrates that there were other facts that provided
Brockman reasonable suspicion for a traffic stop—namely, Ackley’s manner and
mode of driving combined with Brockman’s observations of Ackley stumbling with
a bottle in his hand and wearing dark glasses at night.  Thus, the resolution of the public
road/private road question is not crucial to the question of reasonable
suspicion to stop, and the trial court did not err in not instructing the jury
on this issue.  See id. at 506, 516–17 (holding that if even factual dispute
regarding officer’s given reason for reasonable suspicion—defendant’s
nervousness—was resolved in favor defendant, officer still had ample basis for
reasonable suspicion based on totality of other facts; noting that defendant’s
purported nervousness was “lagniappe—icing on the cake to determination of
reasonable suspicion,” rather than crucial). 
      

c.       Whether
“it is an offense in Texas to drive a
motor vehicle on a private road and not wear a seatbelt”

 

Ackley’s final argument is that the
jury should have been given an instruction requiring it to determine whether or
not certain conduct (driving a motor vehicle on a private road while not
wearing a seatbelt) is an offense in this state.  This final proposed instruction does not
present a question of fact for the jury’s resolution, but a question of law,
which is reserved to the court, and, so, no article 38.23 instruction was
required on that question.  Spence v. State, 325 S.W.3d 646, 648
(Tex. Crim. App. 2010) (holding that trial court did not err in declining to give article 38.23 jury instruction because there was no factual
dispute for jury to resolve, only question of law for court). 

We overrule Ackley’s first issue.

REASONABLE SUSPICION

          In his second issue, Ackley contends
that the trial court erred “in finding probable cause existed that an offense
occurred because Ackley was not required to wear a seatbelt on a private road
within a privately owned, managed, and maintained marina and campground” and
argues that “[i]n the absence of reasonable suspicion that an offense had
occurred, a traffic stop and subsequent search are illegal and any evidence
procured from them must be excluded as tainted ‘fruit’ of the search.”

Ackley filed a “DWI Motion to Suppress Blood” that included
numerous contentions, including that “seizure” was made without reasonable
suspicion.  However, there was no
pretrial hearing or ruling on this motion. 
There was a hearing on the motion to suppress during trial, but it
occurred after the jury had already heard, without any objection, extensive
testimony by Brockman regarding the stop and after the blood that Ackley sought
to suppress had already been admitted without objection.  At the time that the State offered the (vial
of) blood seized from Ackley pursuant to the search warrant, Ackley
affirmatively stated that he had “no objection” to its admission.

At the suppression hearing during trial, the only evidence
that Ackley sought to have suppressed was the actual
blood-alcohol-concentration result.  Ackley
affirmatively stated that he had “no objection” to testimony that blood-test
results confirmed the presence of alcohol in his blood, but argued that the
actual blood- alcohol-concentration results number
should be suppressed because the State failed to “satisfy the scientific
reliability aspect of this Kelly/Daubert motion.”[3]  This was only argument advanced at the
hearing before the trial court made its ruling denying Ackley’s motion to
suppress.  

The only reference made to the trial court about a lack of
reasonable suspicion for the stop took place long after the trial court’s
ruling on the motion to suppress and after the evidence in the case had been
closed.  During the jury-charge
discussion, Ackley’s counsel advised the court that he needed to file some
memoranda of law, including one pertaining to the road being a private
road.  Counsel stated that, “in the event
[the court] do[es] determine this is a public place, it’s still a private road
and there’s no duty of law to wear a seat belt on a private road; therefore
there is no reasonable suspicion to pull Mr. Ackley over and everything must be
suppressed as fruit of the poisonous tree according to Texas Code of Criminal
Procedure 38.23.”  The State objected
that it had received no notice of the filing of “these motions,” the trial
court and Ackley’s counsel noted that the documents were memoranda, and Ackley’s
counsel added that he had “a motion on file, a general motion to suppress and
these are just memorandums to let you know where I am going with these.”  The trial court responded, “Sure.  The Court denies the—I think I’ve already
ruled on the motion to suppress, but I will continue with that ruling.” 

The filing of a motion to suppress alone does not preserve
any error in the admission of the evidence sought to be suppressed.  Coleman
v. State, 113 S.W.3d 496, 499–500 (Tex. App.—Houston [1st Dist.] 2003), aff’d on other grounds, 145 S.W.3d  649 (Tex. Crim. App. 2004).  If a motion to suppress has not been ruled on
by the time that the evidence is offered at trial, a defendant must object to
the evidence at the time it is offered in order to preserve error.  Ross v.
State, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984).  An objection to—or motion to
suppress—evidence is untimely if made after the evidence, or substantial
testimony about it, has already been admitted without objection.  Marini
v. State, 593 S.W.2d 709, 714 (Tex. Crim. App. 1980); Stults v. State, 23 S.W.3d 198, 205–06 (Tex. App.—Houston [14th
Dist.] 2000, pet. ref’d); Laurant v.
State, 926 S.W.2d 782, 783 (Tex. App.—Houston [1st Dist.] 1996, pet.
ref’d); Thomas v. State, 884 S.W.2d
215, 216–17 (Tex. App.—El Paso 1994, pet. ref’d).  A motion to suppress urged after the State
has rested its case and the challenged evidence has been admitted without
objection is too late to preserve error.[4]  Nelson
v. State, 626 S.W.2d 535, 536
(Tex. Crim. App. [Panel Op.] 1981); Sims
v. State, 833 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1992, pet.
ref’d).  Additionally, it is well-settled
that if a defendant affirmatively states that he has “no objection” to the
admission of the item that he sought to have suppressed, then he waives any
complaint as to its admission.  Moraguez v. State, 701 S.W.2d 902, 904
(Tex. Crim. App. 1986); Thomas v. State,
312 S.W.3d 732, 736 (Tex. App.—Houston [1st Dist.] 2009, pet. ref’d). 

Ackley neither objected to the admission of Brockman’s
testimony regarding the stop, nor objected to the admission of the actual blood
that he sought to have suppressed.  Ackley
affirmatively stated that he had no objection to the admission of the
blood.  The legal theory that Ackley
advances on appeal was not presented to the trial court at his hearing on the
motion to suppress and was only mentioned at the time of the discussion of the
jury charge—long after the jury had all the evidence before it, including that
which had been the subject of the motion to suppress, and after the State had
rested its case.  Ackley failed to
preserve this contention for our review.  See See Tex.
R. App. R. 33.1; Moraguez, 701
S.W.2d at 904; Nelson, 626 S.W.2d at
536; Marini, 593 S.W.2d at 714; Thomas, 312 S.W.3d at 736; Stults, 23 S.W.3d at 205–06; Laurant, 926 S.W.2d at 783; Thomas, 884 S.W.2d at 216–17; Sims, 833 S.W.2d at 284. 

We overrule Ackley’s second issue.

 

 

 

 

CONCLUSION

          We affirm the judgment of the trial
court.

 

 

                                                                   Jim
Sharp

                                                                   Justice 

 

Panel
consists of Justices Jennings, Higley and Sharp.[5]

Do
not publish.   Tex. R. App. P. 47.2(b).

 

 

 











[1]           Tex. Penal Code Ann. § 49.04(a) (West 2011 & Supp. 2011).  

 





[2]           When
determining whether Brockman could legitimately stop Ackley,
the focus is not on whether Ackley actually committed the crime or the ultimate
accuracy of the information upon which the officer relied; a stop may still be
lawful even if the facts on which it was based are ultimately found to be false
or wrong.  Icke v. State, 36 S.W.3d 913, 916 (Tex. App.—Houston [1st Dist.] 2001, pet.
ref’d). 

 





[3]
          See Daubert v. Merrill Dow
Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993); Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992).  Ackley’s extensive motion to suppress included
an argument that blood-test evidence could not be admitted unless there was
proof of reliability as required by Kelly.





[4]
          A narrow exception to this rule
applies when, and only when, the trial court has made specific pretrial
comments that “essentially [directs the defendant] to wait until all the
evidence is presented” before seeking a ruling from the court on the motion to suppress
and has told the defendant that it would “make no ruling until all the
testimony had been presented.”  Garza v. State, 126 S.W.3d 79, 84–85
(Tex. Crim. App. 2004).





[5]
          This case was originally submitted to a panel consisting of
Justices Jennings, Alcala, and Sharp. 
Justice Alcala was sworn in as a judge of the Court of Criminal Appeals on
May 20, 2011 and is no longer on this Court. 
See Tex. Const. art. XLI, § 40(a).